UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALBERTO R. ALONSO | * | CIVIL ACTION NO. 22-4661 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND AS PRINCIPAL OF THE NON-JUDICIAL AGENCY AND EMPLOYEES OF TULANE UNIVERSITY POLICE DEPARTMENT | * * * * * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion to Dismiss filed by defendant the Administrators of the Tulane Education Fund ("Tulane"). (Rec. Doc. 7). Tulane seeks dismissal of some, but not all of plaintiff's claims. Because plaintiff has failed to state a claim under the Louisiana Constitution, Article I, §3; Louisiana Civil Code articles 2315, 2316, 2371, and 2320; and Louisiana's Whistleblower Statute, La. Rev. Stat. § 23:967, Tulane's motion is GRANTED and the aforementioned claims are dismissed with prejudice.

Background

Plaintiff Alberto Alonso is a Hispanic male who worked as a full time police officer for the Tulane University Police Department ("TUPD") since 1991. On September 23, 2021, he observed and heard Mason Spong—a white male—state that was going to "get his whip" and "crack his whip" during a TUPD meeting. Alonso believed the body language and demeaning comments were made to intimidate minorities, including himself, because of Spong's friendship and influence with Chief Kirk Bouyelas. Alonso reported Spong's comments to Deputy Chief Jarrod Sullivan. On October 4, 2021, Damon Bell reported to Alonso that Captain Gerald Young exhibited favoritism and may have violated policy by transferring a trainee "from one Field

1

Training Officer to another" even though the trainee was not POST certified as required.[1] Alonso alleges that he notified Sullivan of "the possible violation of state law on the same date." (Rec. Doc. 1-1, at 3). On or about October 6, 2021, Alonso spoke to Dawn Broussard at Tulane's Office of Institutional Equity about Bouyelas' pattern and practice of hiring and protecting from accountability his personal friends and quickly promoting them over more qualified senior officers, along with acts of disparate treatment, violations of best practices and TUPD policies, and unethical business practices.

Meanwhile, TUPD initiated three investigations into Alonso. The first arose out of alleged misconduct on September 30, 2021, as reported by an anonymous complaint regarding alleged aggression by a TUPD officer in civilian clothes towards Tulane students in line to enter a football game. The second investigation was initiated on October 6, 2021, when TUPD received an undated complaint via mail that a male driving a TUPD marked pickup truck was speeding on the West Bank expressway with a female and a dog as passengers. A separate investigation related to the September 30, 2021, incident was then initiated because the complaint alleged that Alonso was not wearing a TUPD uniform while executing police duties. According to Tulane, the investigations resulted in findings that Alonso be held responsible for violating certain TUPD General Orders and Rules.

Alonso maintains that in the investigations and review of his performance, he was held to a higher standard than his white counterparts. He alleges that Sullivan told him as much during the investigation.

On November 4, 2021, Alonso suffered an injury while on the job. He alleges that Bouyelas refused to allow him to continue working light duty and ordered him to use his vacation and sick

---

[1] POST is an acronym that stands for Peace Officer Standards and Training Council.

benefits by applying for leave under the Family Medical Leave Act. Alonso requested that the hearing date related to the investigations be postponed until he made a full recovery so he would be able to defend the charges. He alleges that Bouyelas ordered him to provide a medical certificate to establish why he could not participate in a Zoom hearing on or before November 24, 2021. But Alonso appealed this order to the Office of Human Resources as an act of discrimination and harassment and reports that the order was overruled. Alonso alleges that because he feared Bouyelas' actions would continue with the goal of precluding him from continuing his law enforcement career, he accepted long term disability benefits and transitioned off Tulane's payroll, effectively ending his employment on February 3, 2022.

Alonso filed this lawsuit in state court alleging defendants have violated the Louisiana Constitution, Article I, §3; federal employment discrimination laws, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq.; Louisiana's Whistleblower Statute, La. Rev. Stat. § 23:967; and that defendants are liable for negligence and respondeat superior under La. Civ. Code art. 2315 and 2320. Defendants removed to this Court on November 28, 2022. The parties have consented to proceed before the magistrate judge pursuant to 28 U.S.C. § 636(c).

In the present Motion to Dismiss, Tulane argues that Alonso's constitutional claim must be dismissed because such a claim cannot be stated against a private entity. It argues that Alonso's tort claims under Louisiana Civil Code article 2315 and 2320 must be dismissed because these laws do not apply to employment discrimination claims. Finally, it argues that Alonso's whistleblower claims must be dismissed because the statute should not apply to a private educational non-profit entity or, in the alternative, because Alonso has not sufficiently alleged a violation of state law by Tulane.

Alonso opposes the motion. He argues that Tulane's proposed interpretation of the whistleblower statute to exclude private educational non-profit entities from the definition of "employer" has been rejected by the Fifth Circuit. He further argues that his complaint describes the felony crime of Injuring Public Records, La. Rev. Stat. § 14:132, because Tulane must certify that its police officers are POST certified on an annual basis. Thus, he appears to argue that he triggered the Whistleblower statute when he notified Sullivan that Bell had reported Young had transferred a trainee who was not POST certified. Alonso does not address Tulane's argument that employment discrimination cannot form the basis of a negligence claim, but instead he insists that he has stated a claim for negligence because he has alleged that Tulane intentionally ignored his plea for protection and relief. He seems to argue that Tulane is not entitled to immunity under Louisiana's Workers' Compensation statute. Alonso does not address Tulane's argument on his constitutional claim.

Law and Analysis

1. *Rule 12(b)(6) Standard*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is

plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

   2. *Article I, Section 3 of the Louisiana Constitution*

   Article I, Section 3 of the Louisiana Constitution provides that:

   No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.

La. Const. Ann. art. I, § 3. This provision concerns discriminatory laws and "does not create a cause of action against a private individual or a company." Smolensky v. Gen. Elec. Co., No. CIV. A. 99-1849, 2000 WL 341031, at *9 (E.D. La. Mar. 30, 2000); Hornsby v. Enter. Transp. Co., 987 F. Supp. 512, 514–15 (M.D. La. 1997). Alonso does not dispute that he cannot state a claim against a private entity like Tulane under Article I, Section 3 of the Louisiana Constitution. Accordingly his claim under Article I, Section 3 of the Louisiana Constitution shall be dismissed with prejudice.

   3. *Louisiana Civil Code Article 2315*

   Louisiana Civil Code article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. But this code article "does not protect against employment discrimination." McCoy v. City of

Shreveport, 492 F.3d 551, 563 n. 34 (5th Cir. 2007). This is because the Louisiana Employment Discrimination Law ("LEDL") specifically addresses employment discrimination and when two statutes conflict, the more specific must prevail. See Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev., 904 F.3d 377, 380 (5th Cir. 2018) (holding that the district court properly dismissed plaintiff's employment discrimination claims under article 2315 because such a cause of action was inconsistent with the LEDL); see also Gluck v. Casino Am., Inc., 20 F. Supp. 2d 991, 994–95 (W.D. La. 1998). Courts have applied this rule even where a plaintiff cannot state a claim under the LEDL. See Jackson v. Country Club of Louisiana, Inc., No. CV 20-452-SDD-EWD, 2021 WL 261538, at *7 (M.D. La. Jan. 26, 2021).

Here, Alonso's claims are for employment discrimination and are subject to the LEDL. The fact that Alonso has decided not to file a claim under the LEDL and that he could not state a claim against LEDL because non-profit entities are excluded from the LEDL definition of employer[2] does not change the conclusion that the legislature's specific framework for employment discrimination must prevail over the more general negligence cause of action in article 2315.[3] Just as the court in Jackson found that the plaintiff could not state a claim under LEDL because the defendant was a nonprofit corporation that was not an "employer" for purposes of the LEDL and found further that the plaintiff could not state a claim for employment discrimination under 2315 because the LEDL supersedes article 2315 for such claims, the court here finds that Alonso cannot state a claim under article 2315 even though he is also unable to state

---

[2] See La. Rev. Stat. § 23:302(2)(b) (providing that the LEDL does not apply to "[e]mployment of an individual by a private educational or religious institution or any nonprofit corporation . . . .").
[3] Alonso argues that an employer's immunity from tort claims under the Workers' Compensation statute does not extend to intentional torts. Workers' Compensation immunity is not at issue in this lawsuit and this argument is inapposite.

a claim under the LEDL. Alonso has cited no case with a contrary conclusion.[4] Accordingly his article 2315 claims shall be dismissed with prejudice.

4. *Louisiana Civil Code Article 2320*

Louisiana Civil Code article 2320 provides that an employer is "answerable for the damage occasioned" by its employees "in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. This rule " is applicable to claims based on general tort law." Levisee v. Excel Scaffolding & Leasing Corp., 2020-1013 (La. App. 1 Cir. 4/26/21), 2021 WL 1609810, *16 n. 7 (unpublished). Just as the more specific provisions of the LEDL supersede a claim for negligence under article 2315, the LEDL must supersede any claim for an employer's liability for employment discrimination under article 2320. Accordingly, the Court finds that Alonso cannot state a claim under article 2320 and these claims shall be dismissed with prejudice.[5]

5. *Whistleblower Claims*

To state a claim under Louisiana's whistleblower statute, a plaintiff must show that

(1) [Defendant] violated the law through a prohibited workplace act or practice; (2) she advised [Defendant] of the violation; (3) she threatened to disclose [or disclosed] the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice.

Kell v. Iberville Bank, 352 F. Supp. 3d 650, 661–62 (E.D. La. 2018) (quoting Hale v. Touro Infirmary, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1216) (alteration in original).

---

[4] Alonso cites Martin v. Thomas, where the Louisiana Supreme Court addressed the issue of whether fault for a tort committed by an employee must be assessed as to both the employer and employee under Louisiana's comparative fault regime even where the employer admits that the employee was acting in the course and scope of employment such that the employer will be liable for the employee's fault. 2021-01490 (La. 6/1/22), 346 So. 3d 238, 242. That issue and the court's reasoning does not bear on the issues before this Court.

[5] This reasoning applies equally to any purported tort claim under Louisiana Civil Code articles 2316 and 2317, which Alonso cites in his opposition memorandum but does not reference in his Petition.

Plaintiff must establish that the defendant "committed an *actual* violation of [Louisiana] law." Herster v. Bd. of Supervisors of Louisiana State Univ., 887 F.3d 177, 187 (5th Cir. 2018) (quoting Wilson v. Tregre, 787 F.3d 322, 326 (5th Cir. 2015)) (emphasis and alteration in original); Ware v. CLECO Power LLC, 90 F. App'x 705, 709 (5th Cir. 2004) ("Nowhere in his amended complaint does [plaintiff] indicate which state law, if any, was violated by [defendant] and therefore he fails to state a claim under La. Rev. Stat. § 23:967"). For example, in Genella v. Renaissance Media, the plaintiff alleged that "petitioner, as supervisor of company vehicles, reported one of his supervisors for using a company credit card to repair his private vehicle, which use violated company policy *as well as state law*." 115 F. App'x 650, 652 (5th Cir. 2004) (unpublished). But the plaintiff did not indicate which state law was violated and the district court dismissed the claim because plaintiff did not "not contend that [defendant] broke the law, rather that [defendant] was a victim of its employee's actions." Id. The Fifth Circuit affirmed. Id.

Here, Alonso alleges merely that he notified Sullivan of a "possible violation of state law" arising out of Young exhibiting favoritism and transferring a trainee from one Field Training Officer to another even though the trainee was not POST certified. His petition does not identify any law that TUPD violated. It therefore fails to satisfy the requirement that an actual violation of Louisiana law be alleged.

In his opposition memorandum, Alonso attempts to explain that TUPD may have violated the felony crime of Injuring Public Records under La. Rev. Stat § 14:132. This statute criminalizes—among other things—the falsification of any record or document "filed or deposited, by authority of law, in any public office or with any public officer." La. Rev. Stat § 14:132. Alonso further explains that TUPD must certify the required training of officers who will patrol Tulane campuses in compliance with the Louisiana POST.

Importantly, Alonso's argument in opposition does not remedy the deficiency in the Petition. Moreover, even if the Court allowed Alonso to amend his complaint to reference this statute, the Petition still would not allege a violation of state law by TUPD. Assuming that the trainee was required to be POST certified at the time of the alleged transfer, Alonso has alleged no facts to support finding that TUPD falsified any required certifications by, for example, reporting that the trainee was indeed certified. Moreover, there are no factual allegations in either the Petition or Alonso's opposition to support concluding that Alonso threatened to or did disclose TUPD's purported violation of the Injuring Public Records law. Accordingly, the Court finds that Alonso has failed to state a claim under Louisiana's Whistleblower statute and this claim shall be dismissed with prejudice.

The Court notes that TUPD raises the alternative argument that the Whistleblower statute is inapplicable because Tulane is a non-profit educational institution that is exempt under the LEDL and courts have held that the definition of "employer"[6] in the LEDL applies to the Whistleblower statute. E.g., Heintz v. Lawson, No. CV 18-366, 2019 WL 127057, at *10 (E.D. La. Jan. 7, 2019) ("Although the statute itself does not define 'employer,' courts have consistently applied the definition of 'employer' as set forth in La. Rev. Stat. § 23:302, Louisiana's general employment discrimination statute."). This argument seems to be precluded by the Fifth Circuit's decision in Sanders v. Christwood, where the court of appeals observed that even if the LEDL definition of employer applies to the Whistleblower statute, "nonprofits are employers; the statute

---

[6] Under the LEDL, "employer" means "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Rev. Stat. § 23:302(2). The definition then provides that "[t]he provisions of this Chapter shall only apply to an employer who employs twenty or more employees" and further that "[t]his Chapter shall not apply to" the employment of an individual by a parent, spouse, or child, employment in the domestic service of the employer, employment of an individual by a private educational or religious institution or nonprofit corporation, or employment by a religious school. Id.

only says that they are not subject to the LEDL." 970 F.3d 558, 566 (5th Cir. 2020). The court of appeals also found that although "anti-discrimination statutes and whistleblower statutes concern *similar* subject matter," they "do not concern the *same* subject matter, and similarity alone is not enough to justify incorporating all of the LEDL's exceptions and their underlying policy judgments." Id.  This reasoning would seem to apply to Tulane—which is excluded from liability under the LEDL but nonetheless satisfies the definition of "employer" under that statute. Nonetheless, because the Court has found that Alonso has failed to state a Whistleblower claim, the Court does not resolve this issue.

## Conclusion

For the foregoing reasons, the Court finds that Alonso has failed to state a claim under the Louisiana Constitution, Article I, §3; Louisiana Civil Code articles 2315, 2316, 2371, and 2320; and Louisiana's Whistleblower Statute, La. Rev. Stat. § 23:967. Accordingly, TUPD's partial Motion to Dismiss is GRANTED and Alonso's claims under the Louisiana Constitution, Article I, §3; Louisiana Civil Code articles 2315, 2316, 2371, and 2320; and Louisiana's Whistleblower Statute, La. Rev. Stat. § 23:967, are dismissed with prejudice.

New Orleans, Louisiana, this  9th   day of January, 2023.

_____
Janis van Meerveld
United States Magistrate Judge